UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>BROOKE D. WAGNER,<br><br>Defendant. | Civil Action No. |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges the following against Defendant Brooke D. Wagner ("Defendant" or "Wagner"):

## SUMMARY

1. On May 30 and June 2, 2008, Wagner, former Vice President of Corporate Communications at Indevus Pharmaceuticals, Inc. ("Indevus"), engaged in insider trading when he sold shares of Indevus common stock after learning that the United States Food and Drug Administration ("FDA") had concerns that would delay the FDA approval process for Nebido, a drug that Indevus had developed. By selling Indevus stock before the company disclosed this negative news publicly, Wagner avoided losses of approximately $43,000. Wagner also made profits of approximately $21,000 on timely short sales of Indevus stock.

2. By engaging in the conduct alleged herein, Wagner violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

3.      Based on the foregoing, the Commission seeks the following relief against Wagner: (i) entry of a permanent injunction prohibiting Wagner from violating Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder; (ii) disgorgement of the losses avoided and ill-gotten gains by Wagner, plus prejudgment interest thereon; and (iii) the imposition of a civil monetary penalty.

## JURISDICTION AND VENUE

4.      The Commission brings this action pursuant to the enforcement authority conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. §§ 77t(b)] and Sections 21(d) and 21A of the Exchange Act [15 U.S.C. §§ 78u(d), 78u-1]. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(e), 21A and 27 of the Exchange Act [15 U.S.C. §§ 78u(e), 78u-1 and 78aa].

5.      Venue is proper in this district pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa] because Defendant resides, and the acts constituting the alleged violations occurred, in the District of Massachusetts.

6.      In connection with the acts, transactions, and practices alleged in this Complaint, Defendant, directly or indirectly, made use of the means or instruments of transportation or communication in interstate commerce, the means or instrumentalities of interstate commerce, the facilities of a national securities exchange, or the mails.

7.      Unless enjoined, Defendant will continue to engage in the acts, practices, transactions and courses of business alleged herein, or in acts, practices, and courses of business of similar object and purpose.

**DEFENDANT AND RELATED ENTITY**

8. **Wagner**, age 44, is a resident of Andover, Massachusetts. From approximately August 2005 through June 30, 2008, Wagner was Vice President of Corporate Communications at Indevus. In that capacity, Wagner's responsibilities consisted largely of drafting and reviewing press releases and handling inquiries from investors and the public.

9. **Indevus**, at all relevant times, was a Delaware corporation with headquarters in Lexington, Massachusetts, that developed and marketed biopharmaceutical products in the fields of urology and endocrinology. Indevus's common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act and traded on NASDAQ. On or about March 23, 2009, Indevus was acquired by a wholly-owned subsidiary of Endo Pharmaceutical Holdings, Inc., a Delaware corporation with headquarters in Chadds Ford, Pennsylvania.

**FACTUAL ALLEGATIONS**

10. Indevus developed a drug known as Nebido, a testosterone replacement therapy. In August 2007, Indevus submitted a new drug application to the FDA seeking approval to market Nebido to the public. The FDA set a date of June 27, 2008, to act on the application.

11. On the morning of Friday, May 30, 2008, numerous Indevus representatives, including Wagner, participated in a telephone call with FDA staff concerning Nebido. During the call, the FDA staff indicated that it had concerns about a side effect of Nebido and that it was seeking additional data to address these concerns before making a decision on whether to grant approval for Nebido to be marketed to the public. For the rest of the day and over the ensuing weekend, Indevus representatives scrambled to determine whether the company had additional study data to address the FDA's concerns.

12. Shortly after the call with the FDA on May 30, Wagner used his computer at Indevus's offices to log into his personal brokerage account. He entered orders to sell all the Indevus holdings in that account, which totaled 12,500 shares of Indevus common stock. Wagner also logged into an investment account for the benefit of one of his children and sold all the Indevus holdings in that account, which amounted to 1,050 shares of Indevus common stock.

13. Later on May 30, Wagner entered an order to sell short 5,000 shares of Indevus common stock. A "short sale" is a sale of shares that the seller does not own at the time of the sale but commits to purchasing at a later date. A seller enters into a short sale in anticipation of a decline in the stock price, which would allow the seller to complete or "cover" the transaction by purchasing shares at a lower price and thereby earn a profit.

14. On Monday, June 2, 2008, Wagner entered an order to sell short an additional 2,000 shares of Indevus common stock.

15. By the middle of the day on June 2, Wagner's supervisor informed him that Indevus had no additional data to provide to the FDA and that it would make a public announcement about the FDA's concerns and the expected delay in the FDA approval process for Nebido.

16. Thereafter, Wagner drafted a press release disclosing the FDA's concerns and stating that, on account of these concerns, Indevus expected the FDA approval process for Nebido would be delayed for at least eighteen months while the company gathered and submitted additional data to the FDA. Wagner also drafted a "question-and-answer" document for use by Indevus representatives in speaking with investors and the press.

17. After the close of the stock market on Tuesday, June 3, 2008, Wagner assembled all available support staff at Indevus who might field calls from investors and the press. Wagner

4

and others informed them of the press release that would be issued the following day and the likelihood that they would receive inquiries about the release. Wagner also told the staff that because they were now in possession of material non-public information, they could not trade Indevus securities until further notice.

18. On the morning of Wednesday, June 4, 2008, prior to the opening of the market, Indevus issued the press release that Wagner had drafted disclosing the FDA's concerns and the expected delay in the FDA approval process for Nebido.

19. By the close on June 4, the price of Indevus common stock had dropped $2.84 per share from the prior day's closing price of $4.10 per share to $1.26 per share, a decline of 69%.

20. On June 6, 2008, after the expiration of a two-day ban on trading by Indevus officers and employees following the announcement regarding Nebido, Wagner covered his short sales by purchasing shares of Indevus common stock at a favorable price.

21. Wagner's short sales of Indevus stock yielded profits of approximately $21,000.

22. By selling the Indevus stock in his brokerage account and in the investment account for his child prior to the negative announcement regarding Nebido, Wagner avoided losses of approximately $43,000.

## FIRST CLAIM
### (Section 17(a) of Securities Act)

23. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 22 above as if set forth fully herein.

24. As set forth above, Wagner, directly or indirectly, acting knowingly or recklessly, by use of the means or instruments of transportation or communication in interstate commerce or of the mails, in the offer or sale of securities: (a) employed a device, scheme, or artifice to defraud; (b) obtained money or property by means of an untrue statement of material fact or by

omitting to state a material fact necessary to make the statement not misleading; or (c) engaged in a transaction, practice, or course of business which operated as a fraud or deceit upon the purchasers of such securities, in violation of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM
### (Section 10(b) of Exchange Act and Rule 10b-5)

25.     Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 22 above as if set forth fully herein.

26.     As set forth above, Wagner, directly or indirectly, acting knowingly or recklessly, in connection with the purchase or sale of securities, by use of the means or instrumentalities of interstate commerce or the facilities of a national securities exchange or the mail: (a) employed a device, scheme, or artifice to defraud; (b) made an untrue statement of material fact or omitted to state a material fact necessary to make the statement made not misleading; or (c) engaged in acts, practices, or courses of business which operated as a fraud or deceit upon any person, in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission requests that this Court issue a Final Judgment:

A.  Permanently enjoining Wagner from violating, directly or indirectly, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

B.  Ordering Wagner to disgorge his loss avoided and ill-gotten gain, plus prejudgment interest thereon;

C.  Ordering Wagner, pursuant to the Insider Trading Sanctions Act of 1984, codified at Section 21A of the Exchange Act, as amended [15 U.S.C. § 78u-1], to pay a civil monetary penalty;

D.  Retaining jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

E.  Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

The Commission hereby demands a trial by jury on all claims so triable.

Respectfully submitted,

SECURITIES AND EXCHANGE COMMISSION

By its attorneys,

_/s/ Naomi J. Sevilla_
Luke T. Cadigan (BBO No. 561117)
    Senior Trial Counsel
Scott D. Pomfret (BBO No. 641717)
    Branch Chief
Naomi J. Sevilla (BBO No. 645277)
    Senior Counsel
33 Arch Street, 23rd Floor
Boston, Massachusetts 02110
Telephone: (617) 573-8919 (Cadigan)
Facsimile: (617) 573-4590
E-mail: cadiganl@sec.gov
        sevillan@sec.gov

Dated: January 11, 2010